UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

LASALLE PARISH SCHOOL BOARD                    CIVIL ACTION NO. 07-0399

-vs-                                                      JUDGE DRELL

ALLIANZ GLOBAL RISKS U.S.                       MAGISTRATE JUDGE KIRK
INSURANCE COMPANY, et al.

## R U L I N G

Before the Court is a motion to dismiss (Doc. 22) pursuant to Fed. R. Civ. P.

12(b)(6) filed by defendant Allianz Global Risks U.S. Insurance Company's ("Allianz")

and defendant Eagle Adjustment Services, Inc. ("Eagle"), seeking dismissal of all claims

by the plaintiff, LaSalle Parish School Board ("LaSalle").  For the reasons set out below,

Allianz's motion is GRANTED IN PART on LaSalle's claims relating to enforcement of the

reinsurance contract issued by Allianz and under La. R.S. §§ 22:658 and 1220 against

Allianz and Eagle.  The motion is DENIED on all other claims, in particular the

detrimental reliance and negligent misrepresentation claims.

### BACKGROUND

On November 16, 2006, LaSalle filed suit against defendant Allianz in the 28th

Judicial District Court for LaSalle Parish, Louisiana, alleging that Allianz is liable to

LaSalle, under several theories, for failure to pay more than $800,000 relating to an

insurance claim. On February 21, 2007, LaSalle filed a first amending petition in the state

court, adding defendant Eagle Adjusting Services, Inc. (later amended to Eagle

Adjustment Services, Inc.) and claiming that Eagle was liable to LaSalle based on the actions of Eagle's employee, Bill Cartwright.  Allianz was served with the original petition on or about February 2, 2007, and LaSalle faxed a copy of the first amending petition on February 27, 2007.  On March 5, 2007, the action was timely removed to this Court pursuant to 28 U.S.C. § 1446.  We have subject matter jurisdiction under 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy clearly exceeds $75,000.00, exclusive of interest and costs.  On October 10, 2007, Allianz filed the instant motion to dismiss (Doc. 22) pursuant to Fed. R. Civ. P. 12(b)(6).

## RULE 12(b)(6) STANDARD

Fed. R. Civ. P. 12(b)(6) allows a party to request that the Court dismiss an action based on a plaintiff's "failure to state a claim upon which relief can be granted."  To prevail on a motion to dismiss under Rule 12(b)(6), "a defendant must show that 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The question the Court must consider when ruling on a Rule 12(b)(6) motion is:  "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."  Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 1357, at 601 (1969)).

There is some overlap between Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56, and that overlap comes into play in this case.  Fed. R. Civ. P. 12(d) provides:

2

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to <u>and not excluded by the court</u>, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(6) (emphasis added).  Significantly, the pleadings potentially encompass other evidence:

> Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.  If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c).

<u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) (citations omitted).  Affidavits are generally allowed only for motions for summary judgment, Fed. R. Civ. P. 56(c), but "the presence of affidavits in the record that were not relied upon by the district court does not convert the motion to dismiss into one for summary judgment."  <u>Davis v. Bayless</u>, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (<u>citing</u> <u>Ware v. Associated Milk Producers, Inc.</u>, 614 F.2d 413, 415 (5th Cir.1980)).

In this case, Allianz and Eagle attached to their answer the contract of reinsurance between Allianz and PCAL (Doc. 12-2) and attached to their motion to dismiss the contract of insurance between PCAL and LaSalle (Docs. 22-4—22-6). LaSalle refers to both of these contracts in sufficient detail in its complaint, and it does not dispute that the contracts in the record are those at issue.  Thus, we may properly refer to those contracts without converting the motion into one for summary judgment under Fed. R. Civ. P. 56.

3

On the other hand, LaSalle attached three affidavits (Doc. 34-3, pp. 11-15) to its memorandum in opposition.  If we were to allow those affidavits, we would be bound to convert the motion into one for summary judgment under the above rules and cases. However, we expressly exclude the affidavits from consideration.  We decide the motion (Doc. 22) before us under Fed. R. Civ. P. 12(b)(6), basing our decision only on the pleadings, including the contracts of insurance (Docs. 22-4—22-6) and reinsurance (Doc. 12-2) attached thereto.

## FACTS

With the above standard in mind, we take our facts from LaSalle's complaint and interpret them in the light most favorable to LaSalle, except where the contracts clearly show otherwise: At all relevant times, LaSalle was the insured on a policy of insurance issued by Property Casualty Alliance of Louisiana ("PCAL"), policy number PC030-04. (Docs. 22-4—22-6).  The LaSalle-PCAL contract ("the insurance contract"), in the words of the complaint, "insur[ed] against casualty loss from, among other things, destruction of buildings owned by the plaintiff," (Doc. 1-2, p. 1, par. 2), including LaSalle High School. PCAL, in turn, entered into a contract of insurance, more precisely reinsurance, with Allianz, in which PCAL alone is listed as the named insured.[1]  (Doc. 12-2).  The PCAL-Allianz contract ("the reinsurance contract"), policy number CLP 3004824, covered

---

[1]  In its complaint, LaSalle asserts that "[a]t all times referred to herein, the plaintiff was the insured under a re-insurance policy issued by Allianz covering loss over and above $250,000.00, the first $250,000.00 to be covered by the policy issued by PCAL." (Doc. 1-2, p. 1, par. 3).  Because the statement makes a legal conclusion that is not supported by the reinsurance contract itself, we do not repeat the error.

PCAL's insurable interest in certain property, evidently including LaSalle High School. (Doc. 12-2, pp. 23, 41, 66-68).

On November 24, 2004, LaSalle High School was destroyed by a tornado, which according to LaSalle "would be a covered loss under the terms and conditions of both policies." (Doc. 1-2, p. 1, par. 4). For purposes of this ruling, we assume without deciding that the loss would in fact be a covered loss if there is valid insurance. LaSalle next asserts that "PCAL has paid the monies required under its policy," without stating how much PCAL paid, and claims that both "PCAL and plaintiff have now called on defendant Allianz to pay the remainder of the monies owed under the terms and conditions of the policies." (Doc. 1-2, p. 2, par. 5). Significantly, PCAL is not a party to this lawsuit, and we know no more than that about PCAL's alleged payment demand. From this point, we quote the complaint:

6.

In connection with the destruction of the building, plaintiff has accepted bids and entered into contracts for the construction of a new school to replace the destroyed building on the site of the destroyed building in Olla, LaSalle Parish, Louisiana.

7.

Plaintiff undertook the above action with the approval of the defendant Allianz, acting through its adjuster, Bill Cartwright.

8.

In reliance upon the recommendations and directions of the said Bill Cartwright, the adjuster hired by defendant Allianz, who repeatedly held himself out as the "policy expert" and "the expert on policy interpretation", plaintiff let contracts, accepted bids, and incurred expense in connection with the aforementioned construction project to replace the destroyed school.

5

9.

In spite of the foregoing, the defendant Allianz has failed and refused to honor its contract of insurance, and has failed and refused to adjust this claim fairly and in good faith.

10.

After having been told by adjuster Cartwright <u>that he would recommend</u> an adjustment figure of $7,614,759.28 in order to settle all claims in connection with this construction project, the plaintiff learned that the defendant, Allianz, was going to ignore the recommendations of Cartwright and was refusing to pay the amounts needed to finish the construction project.

11.

The defendant has also failed to pay the claim within thirty days of receipt of a satisfactory proof of loss.

12.

The amount Allianz is refusing to pay comes to a total of $822,048.28

. . . .

\* \* \*

16.

As a result of the foregoing, the defendant Allianz is liable unto plaintiff in the full and true sum of $822,048.28 with legal interest from date of judicial demand, plus 25% penalties and attorney's fees, all in accordance with LSA-R.S. 22:658, and all costs of court.

(Doc. 1-2, pp. 2-3) (emphasis added).  Paragraph 17, added in LaSalle's first amending

petition, states:

Defendant Eagle, through its authorized representative, agent, or employee, Bill Cartwright, negligently misrepresented to petitioner the coverages petitioner was afforded by the policy issued by Allianz, negligently misled petitioner as to the amounts of coverage and items and damages covered under the policy, would not afford petitioner a policy

upon which the coverages were based, and induced petitioner to detrimentally rely upon representations made by the said Cartwright and the said Eagle.  As a result, Eagle is liable in solido with Allianz for the amounts sued upon.

(Doc. 1-3, p. 1).

## ANALYSIS

In their motion to dismiss (Doc. 22), Allianz and Eagle argue that LaSalle has failed to state a claim upon which relief can be granted because: (a) there is no privity of contract between LaSalle and Allianz and thus no standing for LaSalle to bring suit on the reinsurance contract; (b) LaSalle's reliance on the adjuster's statements was unreasonable in light of the contract language; (c) the adjuster, Eagle, through its employee, Mr. Cartwright, had no authority to alter the terms of the contract; and (d) there was no privity of contract between the adjuster and LaSalle.  Stated differently, Allianz argues that LaSalle has no standing even to bring the contract claim and, furthermore, has failed to state any non-contract claim upon which relief can be granted.

In opposition, LaSalle argues that, regardless of what the reinsurance policy said, Allianz's involvement in the adjustment of the claim somehow means "that LaSalle has a relationship with Allianz of such nature as to support this lawsuit, and that Allianz and Eagle are liable for the statements upon which LaSalle relied to its detriment, and/or that the defendants are liable for the negligent misrepresentation made by Cartwright, Eagle's employee and the agent for Allianz."  (Doc. 34, p. 3).  LaSalle does not satisfactorily address the arguments concerning its contract claims; instead, LaSalle spends the bulk of its memorandum in opposition on the non-contract claims, namely detrimental reliance and negligent misrepresentation.  Allianz and Eagle respond that

(a) there was no promise on which LaSalle might base a detrimental reliance claim, and

(b) there is no basis for a negligent misrepresentation claim, because there was no legal

duty on the part of Eagle (and thus Allianz) to supply correct information to LaSalle. We

address the contract claims and the non-contract detrimental reliance and negligent

misrepresentation claims separately below.

CONTRACT CLAIM

It is clear that LaSalle, at least in part, is attempting to bring a claim under the

reinsurance contract itself. Although the complaint speaks of "the terms and conditions

of the policies," LaSalle claims that "PCAL has paid the monies required under its

policy." (Doc. 1-2, p. 2). Thus, the only policy at issue in this motion is the reinsurance

contract. The complaint centers on LaSalle's allegations that the adjuster allegedly held

himself out to be the "policy expert" and "the expert on policy interpretation"; that

Allianz allegedly "failed and refused to honor its contract of insurance, and has failed

and refused to adjust that claim fairly and in good faith"; and that  Allianz "failed to pay

the claim within thirty days of receipt of a satisfactory proof of loss." (Id.). All of these

allegations either explicitly refer to the reinsurance contract or implicitly refer to

Louisiana insurance statutes. See, e.g., La. R.S. § 22:658(A)(1) ("All insurers . . . shall pay

the amount of any claim due any insured within thirty days after receipt of satisfactory

proofs of loss from the insured or any party in interest.") and § 22:1220(A) ("An insurer

. . . owes to his insured a duty of good faith and fair dealing."). If that were not clear

enough, the complaint closes with a prayer for damages including certain remedies

(such as penalties and attorney's fees) based expressly on La. R.S. § 22:658.

8

Accordingly, we interpret the contract itself.  The Louisiana Supreme Court has summarized the standards for interpreting insurance contracts as follows:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.  The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.  See La. Civ.Code art. 2045 . . . .
>
> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.  See La. Civ Code art. 2047 . . . .  An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.  The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.
>
> * * *
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.  Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.  The determination of whether a contract is clear or ambiguous is a question of law.

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003) (case citations omitted).

LaSalle is clearly the named insured under the LaSalle-PCAL insurance policy; that is not in dispute.  (Docs. 22-4—22-6).  However, the reinsurance policy lists as the named insured only PCAL.  (Doc. 12-2, p. 3).  Nowhere in the policy is LaSalle Parish School Board named except in connection with an endorsement modifying the property coverage form where a table lists, inter alia, the LaSalle Parish School Board as Member Number PC030-04—the policy number of the LaSalle-PCAL insurance contract. (Doc. 12-

9

2, p. 66).[2]  Likewise, LaSalle High School is listed only once in the policy documentation, in a table setting out the names, locations, and monetary values associated with LaSalle buildings.  (Doc. 12-2, p. 68).

The only problem for LaSalle is that its sole insurer is PCAL, not Allianz.  By the plain terms of the reinsurance contract, Allianz reinsured PCAL for PCAL's own loss, not LaSalle's.  "It is well settled that for a person to successfully maintain an action under a contract to which it is not a party the contract must clearly express the contracting parties' intent to stipulate some advantage for that (third) person."  Arrow Trucking Co. v. Continental Ins. Co., 465 So. 2d 691, 698 (La. 1985) (citing, inter alia, La. Civ. Code arts. 1890 and 1902).  Thus, it appears that LaSalle has no standing to sue Allianz under the reinsurance contract, absent an intent to stipulate an advantage for LaSalle.

The Louisiana Supreme Court has held that an insured generally may not sue its insurer's reinsurer directly, whether under the Louisiana Direct Action Statute, La. R.S. § 22:655, or otherwise.  Arrow, 465 So. 2d at 692.  However, the Supreme Court explained a few exceptions to this rule: where the reinsurance contract is for liability rather than for loss, Id. at 698, and where the reinsurance contract contains language exposing the reinsurer to liability under La. R.S. § 22:943.  Id. at 700-01.  Furthermore, while the Arrow court held that the policy in question there did not make the ultimate insured a third party beneficiary of the contract, Id. at 701, the court apparently did not foreclose the

---

[2]  The term "Member" is not used otherwise in the reinsurance contract, but it is used extensively in the LaSalle-PCAL insurance contract.  See, e.g., the Member Representative Form, listing LaSalle Parish School Board as the Member for the PCAL-LaSalle insurance contract.  (Doc. 22-4, p. 9).

possibility that a reinsurance contract <u>could</u> stipulate benefit for a third party. Accordingly, we address each of these exceptions.

First, was the reinsurance contract one insuring PCAL's loss or PCAL's liability? The distinction is important, because the Louisiana Direct Action Statute, La. R.S. § 22:655, applies to liability insurance only. The Louisiana Supreme Court explained: "There are reinsurance policies where the reinsurer agrees to indemnify the reinsured for its liability. And this might well constitute 'liability insurance' . . . . However, that is not the kind of reinsurance contract we have before us in this case. Rather, we have here an indemnity for loss contract." <u>Id.</u> at 698. Likewise, the reinsurance contract in this case insures PCAL for its loss, not for liability. Accordingly, that exception is unavailable.

Second, there is a statutory exception allowing an insured to proceed directly against the reinsurer of its own insurer (the "ceding insurer"):

> A. <u>Whenever an insurer agrees to assume and carry out directly with the policyholder any of the policy obligations of the ceding insurer under a reinsurance agreement,</u> any claim existing or action or proceeding pending arising out of such policy by or against the ceding insurer with respect to such obligations may be prosecuted to judgment as if such reinsurance agreement had not been made, or the assuming insurer may be substituted in place of the ceding insurer.

La. R.S. § 22:943(A) (emphasis added). As the <u>Arrow</u> court explained, "[w]here there is language in a reinsurance agreement indicating that the reinsurer is agreeing 'to assume and carry out directly with the policyholder any of policy obligations of the ceding insurer' then the result will be different. However, the agreement in question here does not come within this statutorily prescribed exception." <u>Arrow</u>, 465 So. 2d at 701. <u>See</u>

11

also <u>Donaldson v. United Community Ins. Co.</u>, 741 So. 2d 676, 681-82 (La. App. 3 Cir. 1999).  Both the statute and the case law are clear that there must be language in the reinsurance agreement itself whereby the reinsurer assumes the duties set out in § 943; otherwise, the reinsurer's conduct is insufficient alone to trigger the exception.  In this case, regardless of Allianz's conduct in handling LaSalle's claim, the reinsurance contract contains <u>no</u> provision that could be construed as satisfying La. R.S. § 22:943(A).[3]  Consequently, that statutory exception cannot apply in this case.

Finally, there is the general question of whether the reinsurance contract creates a third party beneficiary contract.  We note that this might be considered simply part of the analysis for the statutory exception.[4]  Nevertheless, we address it separately.  The rules for third party beneficiary contracts are set out in La. Civ. Code arts. 1978-1982. The most relevant articles for our purposes are La. Civ. Code arts. 1978 ("A contracting party may stipulate a benefit for a third person called a third party beneficiary. . . .") and 1981 ("The stipulation gives the third party beneficiary the right to demand performance from the promisor. . . .").  If the reinsurance contract <u>did</u> somehow create a stipulation

---

[3]  Significantly, the reinsurance contract contains an integration clause that precludes modification of the contract unless Allianz issues an endorsement to the policy.  (Doc. 12-2, p. 14, par. U).  Since there is no endorsement creating an agreement as required by § 943,the contract is silent on that point, and the statutory exception cannot be satisfied.

[4]  For example, the <u>Donaldson</u> court stated:

> Essentially, this statute [La. R.S. § 22:943] allows a third party to directly sue the reinsurer only if the reinsurer has contracted to take on liability directly to the original insured as opposed to indemnifying the primary insurer for a loss suffered. This "cutoff provision" makes the third party a beneficiary to the reinsurance agreement. The cutoff provision is operative only if the reinsurance agreement clearly expresses the contracting parties' intent to stipulate some advantage for that (third) person.

<u>Donaldson</u>, 741 So. 2d at 682 (<u>citing</u> <u>Arrow</u>).

for the benefit of LaSalle, the third party, then LaSalle could demand performance from Allianz, the promisor.  This is the classic stipulation <u>pour autrui</u>.

> The Louisiana Supreme Court has explained:
>
> Our study of the jurisprudence has revealed three criteria for determining whether contracting parties have provided a benefit for a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee.  In applying these criteria, we ultimately rely on the words of Article 1978 that the contract must "stipulate a benefit for a third person."
>
> The most basic requirement of a stipulation <u>pour autrui</u> is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof.  A stipulation <u>pour autrui</u> is never presumed.  The party claiming the benefit bears the burden of proof.
>
> The second factor, certainty as to the benefit provided, is a corollary of the requirement of a manifestly clear stipulation.  "To create a legal obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to the beneficiary."
>
> In connection with the third requirement that the benefit cannot be a mere incident of the contract, we find pertinent the discussion of "incidental benefits" by Professor Smith, 11 Tul. L.Rev. at 28: "[N]ot every promise, performance of which may be advantageous to a third person, will create in him an actionable right.  The problem is to separate the cases where an advantage has been stipulated from those where the advantage relied upon is merely an incident of the contract between the parties."

<u>Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary</u>, 939 So. 2d 1206, 1212-13 (La. 2006) (footnote and most citations omitted).

In the instant case, we may end the analysis at the first requirement, as the reinsurance contract does not contain a clear manifestation of the intent of the contracting parties, PCAL and Allianz, to create a benefit in favor of a third party, LaSalle.  The reinsurance contract nowhere speaks of benefitting PCAL's ultimate

insureds; instead, the contract is framed in terms of insuring PCAL's own loss.  For the same reason, the third requirement, that the benefit cannot be a mere incident of the contract, is not met.  Because the reinsurance contract could only indirectly and incidentally benefit LaSalle, it could not create a stipulation pour autrui.

We are also mindful of the following: "There is no general requirement that stipulations pour autrui be in writing.  However, if the contract must be in writing (See e.g., LSA-C.C. arts. 1536 and 2440.  See also LSA-C.C. art. 1832.), then the stipulation pour autrui must also be in writing."  Joseph, 939 So. 2d at 1215 n. 13.  In the instant case, the reinsurance contract was required to be in writing because it is a contract of insurance (see La. R.S. § 22:628), so the stipulation pour autrui would have to be in writing to be effective.  Furthermore, the PCAL-Allianz reinsurance contract (Doc. 12-2, p. 14, par. U) contains an integration clause requiring Allianz to issue an endorsement to the policy in order to effect any amendment to or waiver of policy terms.  As the Joseph court recognized, the parties are free to contractually agree to limit modifications as they wish, Joseph, 939 So. 2d at 1215-16, so this clause, too, would preclude a non-written stipulation pour autrui in LaSalle's favor.  No matter how Allianz or Eagle actually acted in adjusting the claim, those actions could not and did not create a contractual relationship under the insurance or reinsurance contract.

As a result of the above analysis, LaSalle has no standing to sue Allianz under the terms of the reinsurance contract between PCAL and Allianz.  This obviously precludes any action based on LaSalle's alleged status as Allianz's insured.  Still, we must also address two potentially applicable insurance statutes, La. R.S. §§ 22:658 and 1220, that

14

establish additional and differing causes of action not only for insureds, but also—potentially—for "claimants."

The Louisiana Supreme Court has stated, "We have generally held that statutes subjecting insurers to penalties are to be considered penal in nature and should be strictly construed." Theriot v. Midland Risk Ins. Co., 694 So. 2d 184, 186 (La. 1997) (citing Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983)). Both § 658 and § 1220 are penal in nature. Id. at 188. The policy at issue here is one insuring PCAL's loss only, not a liability policy, insuring LaSalle's losses directly. The clause in Allianz's reinsurance contract setting out duties in the event of loss or damage speaks only of the insured, PCAL. (Doc. 12-2, pp. 12-13). Thus, under the policy, only PCAL may be a "claimant" under the reinsurance policy. We can find no case and no other authority allowing a "claimant" who is not the insured to proceed with a claim under § 658 or § 1220 where the policy covered the insured's loss only. Virtually all of the cases discussing "claimants" at all—whether or not the claimants are allowed to proceed with a claim under a penal statute—involve liability policies where a "claimant" (or a "third party claimant") is one who is the ultimate beneficiary of the policy. See, e.g., Theriot, 694 So. 2d at 185 (collision victim suing tortfeasors' insurers); Marie v. John Deere Ins. Co., 691 So. 2d 1327 (La. App. 1 Cir. 1997) (same); Toerner v. Henry, 812 So. 2d 755 (La. App. 1 Cir. 2002) (same); Woodruff v. State Farm Ins. Co., 767 So. 2d 785 (La. App. 4 Cir. 2000) (same). Because we must strictly construe the penal provisions of § 658 and § 1220, we rule that this situation—a reinsurance policy wherein Allianz insured PCAL's loss and allowed only the insured, and no other claimant, to bring a claim under the policy—is not

15

one that gives rise to a cognizable third party claim based on § 658 or § 1220.

Accordingly, the motion to dismiss will be granted as to all of LaSalle's claims for liability pursuant to the reinsurance contract issued by Allianz and under La. R.S. §§ 22:658 and 1220.

## DETRIMENTAL RELIANCE CLAIM

We turn now to the non-contract claims, beginning with detrimental reliance. The Louisiana Civil Code sets out the requirements for detrimental reliance:

> Cause is the reason why a party obligates himself.

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967. The Fifth Circuit provides the following discussion:

> Detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance. The doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." The doctrine usually functions when no written contract or an unenforceable contract exists between the parties.

> Whether a plaintiff reasonably relied on a promise is generally a fact-bound determination. However, Louisiana law recognizes certain situations where a plaintiff's reliance on a promise is unreasonable as a matter of law. An unambiguous contract may be interpreted as a matter of law, and, applying Louisiana law, we held in Omnitech International, Inc. v. Clorox Company [11 F.3d 1316, 1330 (5th Cir.1994)] that a plaintiff's reliance on promises made outside of an unambiguous, fully-integrated agreement was unreasonable as a matter of law. Omnitech brought a detrimental reliance claim against Clorox, contending that it reasonably relied on extra-contractual representations by Clorox that Clorox would not enter the insecticide market without Omnitech as a partner. We rejected Omnitech's

16

assertion because the parties' fully integrated contract defined the relationship of the parties, and any reliance on outside assurances that moved beyond the well-defined relationship was unreasonable as a matter of law.  We concluded that Clorox's promises "if made, were outside the scope of the fully-integrated, written agreements between Omnitech and Clorox," and we therefore "refuse[d] to look past the written terms of the agreements, and hold that the trial court did not err in finding that any reliance by Omnitech upon these representations was unreasonable as a matter of law."

As in Omnitech, many courts have found a plaintiff's reliance to be unreasonable as a matter of law when the parties have a valid contract defining their rights and limiting the ways in which the contract may be modified.

Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co., 376 F.3d 399, 403-04 (5th Cir. 2004) (footnotes omitted).

In this case, the adjuster's telling LaSalle that "he would recommend an adjustment figure of $7,614,759.28 in order to settle all claims in connection with this construction project" (Doc. 1-2, p. 2, par. 10) does not constitute a promise on which a detrimental reliance claim may be based.  Clearly, a recommendation from an adjuster to an insurance contract is not a promise made by the insurance company to anyone.  Absent a promise, it makes no sense to say that Allianz "knew or should have known that the promise would induce the other party to rely on it to his detriment." La. Civ. Code art. 1967.  To place that burden on Allianz would require it to have a crystal ball, hardly a legal basis to impose liability.  Thus, LaSalle's complaint fails to state a detrimental reliance claim on that basis alone.

Furthermore, even if the adjuster's telling LaSalle that he would make a particular recommendation to Allianz could somehow be construed as a promise—and we stress that it cannot—both the reinsurance contract and LaSalle's insurance contract with

PCAL contain integration clauses, as in <u>Omnitech</u>, barring any modifications absent particular circumstances.  The relevant clause of the PCAL-Allianz reinsurance policy reads in full:

> This 'policy' contains all of the agreements between the insured [PCAL] and the 'company' [Allianz] concerning the insurance afforded.  The first named Insured [PCAL] in the Schedule is authorized to make changes in the terms of this 'policy' with the consent of the 'company'.  The terms of this 'policy' can be amended or waived only by endorsement issued by the 'company' and made a part of this 'policy.'

(Doc. 12-2, p. 14, par. U).  The relevant clause of the LaSalle-PCAL insurance policy reads:

> This Agreement represents the complete understanding of the Parties and may not be amended or altered without the written consent of the parties.

(Doc. 22-4, p. 13, par. 1).   Thus, to the extent that the adjuster's proposed recommendation to Allianz exceeded policy allowances or deviated in any way from the terms of coverage,  there would be no basis for LaSalle to believe the modification was valid, even if LaSalle mistakenly believed it was insured by Allianz.

However, the adjuster's statement that he would recommend a particular adjustment figure to Allianz is not the only potential promise stated in the complaint. LaSalle also claims that "[p]laintiff took the above action [accepting bids and entering into contracts] with the approval of the defendant Allianz, acting through its adjuster, Bill Cartwright" (Doc. 1-2, p. 2, par. 7) and "[i]n reliance upon the recommendations and directions of the said Bill Cartwright . . . plaintiff let contracts, accepted bids, and incurred expenses in connection with the aforementioned construction project to replace the destroyed school." (Doc. 1-2, p. 2, par. 8).  It appears that LaSalle could conceivably

state a true promise rather than simply the adjuster's "promise" to recommend an adjustment figure to Allianz.

Furthermore, there are a number of unanswered questions remaining, based on the pleadings and the attachments thereto. First, while it is true, as we opined above, that Allianz may not be liable in contract or insurance law on the reinsurance policy, as there was no contractual relationship between Allianz and LaSalle, we cannot say at this stage that Allianz must also escape tort liability for the actions of itself and/or its supposed mandatary. Second, we cannot be sure what the exact relationship between Allianz and Eagle (and therefore between Allianz and Cartwright) is, because there is no evidence on that issue before us. Even if Allianz itself made no promise, Allianz could possibly be liable for Eagle's actions if Eagle had sufficient actual or apparent authority to bind Allianz. Third, it is not clear from this record that the recommended adjustment figure actually exceeds coverage based on either policy,[5] so, without more, we cannot say that LaSalle's reliance on any promise it may allege would be unreasonable as a matter of law.

In short, there is an inadequate basis to determine the detrimental reliance claims at this stage, so the Rule 12(b)(6) motion cannot be granted on these claims.

<u>NEGLIGENT MISREPRESENTATION CLAIM</u>

Next, LaSalle argues that both Allianz and Eagle are liable under a theory of negligent misrepresentation, stemming from the statements of the adjuster, Mr.

---

[5] Although the defendants argue that the recommended adjustment figure exceeds the policy coverage, that is not clear from the pleadings and their attachments, and we must construe them in the light most favorable to LaSalle.

Cartwright. In Louisiana, "[a]n action for negligent misrepresentation requires existence of a legal duty on the part of defendant either to supply correct information or not to supply incorrect information, a breach of that duty, and resulting damage to plaintiff." Newbaker v. Lanier, 497 So. 2d 355 (La. App. 3 Cir. 1986) (citing Branton Insulation, Inc. v. Standard-Taylor Industries, Inc., 376 So.2d 178 (La.App. 4 Cir.1979); Beal v. Lomas and Nettleton Co., 410 So.2d 318 (La.App. 4 Cir.1982)).

Whether an insurance adjuster has such a duty turns on the facts of the case. In the context of an adjuster's role in delaying an insured's claim until prescription had run, the Louisiana Fifth Circuit Court of Appeal summarized:

> The issue of negligence in handling the settlement of claims has arisen in the context of negligent misrepresentation. In each of those cases the issue of the relationship between the adjuster and the insured has been considered.
>
> In Pellerin v. Cashway Pharmacy of Franklin, 396 So.2d 371 (La.App. 1st Cir.1981), the plaintiff's claim against the insurer had been dismissed on an exception of no cause of action and on prescription. She alleged that the adjuster had assured her that her claim would be settled as soon as she was released by the physician and told her not to contact him until then. By the time she was discharged and reached the adjuster her claim had prescribed and the company refused to settle. The court, apparently believing the adjuster may have undertaken a duty to inform the insured of prescription, remanded with instructions to allow the plaintiff to amend her petition to allege such a breach of duty. The court stated at 373:
>
>> As a general rule, there is no relationship existing between a claimant and the insurance adjuster on which a duty to inform of prescription can be based. Green v. Grain Dealers Mutual Insurance Company, 144 So.2d 685 (La.App. 4th Cir.1962); Williams v. Red Barn Chemicals, Inc., 188 So.2d 78 (La.App. 1st Cir.1966). However, there may be circumstances in which the adjuster may be said to have undertaken such a duty. Examples may include the relative education of the parties, the diligence of the claimant in seeking the facts, the actual or apparent authority of the

> adjuster, the content of his promises to the claimants, misrepresentation or fraud. <u>Penn Mut. Life Ins. Co. v. Nunnery</u>, 176 Miss. 197, 167 So. 416 (1936)....
>
> The plaintiff's claim in <u>Flowers v. U.S. Fidelity & Guaranty Co.</u>, 367 So.2d 107 (La.App. 4th Cir.1979), was also dismissed on exceptions of prescription based on the accident and of no cause of action on a tort claim arising from the conduct of settlement negotiations by the adjuster and insurer. There, the Fourth Circuit flatly denied the existence of a duty owed by the adjuster to the plaintiff and affirmed. <u>See also</u> <u>Guillory v. Gulf South Beverages Inc.</u>, 506 So.2d 181 (La.App. 5th Cir.1987).

<u>Alarcon v. Aetna Cas. and Sur. Co.</u>, 538 So. 2d 696, 699 (La. App. 5 Cir. 1989).

In the instant case, there is an additional wrinkle, in that we have already held that Allianz was not LaSalle's insurer as a matter of law. However, unusually in this case Allianz dealt with LaSalle directly and supplied the adjuster, Mr. Cartwright, through Eagle. There was apparently no indication that anything related to the claim was out of the ordinary. LaSalle apparently believed that Cartwright had the power to act as he did. Although adjusters generally do not have a duty to inform, LaSalle does allege specific facts, such as Mr. Cartwright's holding himself out to be "the 'policy expert' and 'the expert on policy interpretation,'" as well as his making recommendations and directing LaSalle to proceed with construction (Doc. 1-2, p. 2, pars. 6-8), that potentially could give rise to such a duty to inform and hence liability for negligent misrepresentation under Louisiana law.

At the very least, it is too early to say that LaSalle has failed to state a claim for negligent misrepresentation against Eagle, and, as noted above, we cannot say at this point what the relationship between Eagle and Allianz is, so we cannot say that Allianz

could not be liable on that claim.  Accordingly, the motion must be denied as to the negligent misrepresentation claim as well.

### CONCLUSION

Based on the foregoing, the motion to dismiss (Doc. 22) is GRANTED IN PART as to all of LaSalle's claims relating to enforcement of the reinsurance contract issued by Allianz and under La. R.S. §§ 22:658 and 1220 against Allianz and Eagle.  By separate order, those claims are DISMISSED.  The motion is DENIED as to all other claims, in particular the detrimental reliance and negligent misrepresentation claims.

SIGNED on this 23rd day of April, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE